## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PIONEER MECHANICAL SERVICES, LLC,   )
                                        )
        Plaintiff,                 )
                                          )   2:18-cv-00507
             v.                     )
                                          )
HGC CONSTRUCTION, CO.,           )
                                        )
        Defendant.               )

### OPINION

**Mark R. Hornak, United States District Judge**

     Now before the Court is Defendant/Counterclaimant/Third-Party Plaintiff HGC Construction, Co. ("HGC")'s Motion to Transfer this case pursuant to 28 U.S.C. § 1404(a). (ECF No. 31.) After considering the Motion, Plaintiff Pioneer Mechanical Services, LLC ("Pioneer")'s Note to Court and Counsel (ECF No. 36) indicating that it does not oppose transfer of the case, and Third Party Defendant/Counterclaimant's Endurance Assurance ("Endurance")'s Brief in Opposition to Motion to Transfer Venue Under 28 U.S.C. § 1404 (("Endurance Br."), ECF No. 39), the record to date, and the applicable law, for the reasons that follow, the Court will grant Defendant HGC's Motion and transfer this action to the Southern District of Ohio, Western Division, at Cincinnati, for further proceedings.

### I.    BACKGROUND

     This case arises out of the construction of Artis Senior Living of South Hills ("the Project"), located in Bethel Park, Pennsylvania. (Complaint, ECF No. 1–2, ¶ 5.) According to the Complaint, the Plaintiff, Pioneer, entered into a master subcontract agreement ("Master Subcontract Agreement"), and subcontract agreement rider No. 116066.006 ("Subcontract") with

HGC, that Pioneer would provide labor and materials related to the Artis building. (*Id.* ¶¶ 6–7.)

In exchange, HGC was to pay Pioneer. (*Id.* ¶ 9.)

The Master Subcontract Agreement includes a section addressing dispute resolution.

(Exhibit A, ECF No. 32–1, at 17.) This section provides that:

> Should Contractor and Subcontractor be unable to resolve [any] dispute(s) within
> the twenty-day period set forth above . . . , then either party may file suit in the
> state or federal courts located in Cincinnati, Hamilton County, Ohio, and the
> parties irrevocably submit to the venue and jurisdiction of such courts and further
> waive any claims or arguments of improper venue or lack of jurisdiction.

(*Id.*) The Subcontract incorporates the Master Subcontract Agreement by reference. (*See*

Exhibit A, ECF No. 32–1, at 25

Pioneer also secured a Subcontract Performance Bond ("Bond") from Endurance for the

Project for the benefit of HGC as obligee. Under the Bond's terms, if Pioneer defaults,

Endurance is obligated to either arrange for the performance of Pioneer's obligations under the

Subcontract, or pay the reasonable cost of completing such performance. (Exhibit B, ECF No.

32–2 ("Bond"), at 2.) The Bond incorporates the terms of the Subcontract. (*See id.* ("Subcontract

#: 116066.066 . . . which subcontract is by reference made a part hereof, and is referred to as

subcontract.").)

Pioneer alleges that it performed its scope of work, but HGC did not pay Pioneer in full,

and that HGC owes it a balance of $424,811.57. (Compl. ¶ 14.) Pioneer avers that HGC breached

the contract, that it violated the Pennsylvania Prompt Payment Act, 62 Pa. Cons. Stat. § 3931–

39, and that HGC unjustly enriched itself. (*Id.* 15–24.)

HGC filed an Answer, Counterclaim against Pioneer, and Third-Party Complaint against

Endurance. (ECF No. 8.) In its Counterclaim, HGC avers claims for breach of contract,

promissory estoppel, and unjust enrichment as a result of Pioneer's alleged failure to perform.

2

(*Id.* at 8–9.) HGC also asserts a third-party claim against the Endurance Performance Bond for its costs related to replacing Pioneer and completing Pioneer's scopes of work under the Subcontract. (*Id.* at 12.)

Endurance then filed an Answer to HGC's Third-Party Complaint and a Counterclaim against HGC for unjust enrichment. Endurance avers that it provided labor, materials, and equipment to the Project after Pioneer defaulted, all of which inured to HGC's benefit but for which HGC failed to pay Endurance. (Answer to Third Party Complaint and Counterclaim, ECF No. 16, at 7–8.)

## II. DISCUSSION

In support of transfer, HGC argues that HGC and Pioneer entered into a valid Subcontract, and that Subcontract contains a forum selection clause mandating that "[s]hould Contractor and Subcontractor be unable to [resolve any] dispute(s) within the twenty-day period set forth above . . . , then either party may file suit in the state or federal courts located in Cincinnati, Hamilton County, Ohio, and the parties irrevocably submit to the venue and jurisdiction of such courts and further waive any claims or arguments of improper venue or lack of jurisdiction." (Exhibit A, ECF No. 32–1, at 17.)

HGC asserts that, because the Bond refers to the Subcontract and states that it is "made a part hereof," (Exhibit B, ECF No. 32–2, at 2), Endurance is also bound by the Subcontract's terms, including the forum selection clause. Because HGC's counterclaims against Pioneer derive from Pioneer's averred "failure to perform in accordance with the Subcontract," and its third-party claim against the Endurance Performance Bond relates to its "costs incurred in replacing Pioneer and completing Pioneer's scopes of work under the Subcontract," (HGC Br., at 5), HGC argues that this case must be transferred to the United States District Court for the

Southern District of Ohio, Western Division, at Cincinnati. HGC also notes that Endurance's counterclaim for unjust enrichment against HGC derives from the Project covered by the Subcontract. (*Id.*) Transferring the entire case, says HGC, is consistent with the Supreme Court's decision in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas,* 134 S. Ct. 568, 580 (2013). Pioneer provided notice that it does not oppose the motion to transfer. (Notice, ECF No. 36.)

In opposition to transfer, Endurance argues that it is not a party to the Subcontract, and so the Subcontract's delineated dispute resolution process (including the forum selection clause) does not touch Endurance. Endurance further contends that because its counterclaim for unjust enrichment arises from common law and is independent of any claims asserted among Pioneer and HGC, the forum selection clause does not apply.

Endurance also maintains that, as a natural follow-on to its argument that no valid and enforceable forum selection clause governs the claims by and between it and HGC, this Court must therefore balance the factors set forth by the Third Circuit Court of Appeals in *Jumara v. State Farm Insurance Company*, 55 F.3d 873 (3d Cir. 1995), to determine whether transfer is appropriate, and argues that those factors counsel against transferring the case. Additionally, because Endurance says it is evaluating potential additional tort claims against other third parties involved with the Project, it requests that even if the Court grants HGC's motion to transfer the case, that the Court sever and continue the third-party action and Endurance's counterclaims.

### A. Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

4

consented." 28 U.S.C. § 1404(a). Transferring a case under § 1404(a) is appropriate in situations "where both the original and the requested venue are proper."[1] *Jumara*, 55 F.3d at 878.

"Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum."[2] *Windt v. Qwest Comms. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008). Balancing the interests requires an assessment of both public and private factors as set out by the Third Circuit in *Jumara*, 55 F.3d at 879–80.

However, the Supreme Court has held that when suit is filed in any venue outside that specified in a valid contractual forum selection clause, "a district court should ordinarily transfer the case to the forum specified in that clause" and refrain from doing so only "under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 134 S. Ct. at 581. A valid forum selection clause renders the plaintiff's choice of venue inconsequential, *id.*, and such a clause is treated as conclusive as to the private interest factors, *id.* at 582. Forum selection clauses "should be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

---

[1] Venue is facially proper in both the Western District of Pennsylvania and the Southern District of Ohio. Venue is proper in a civil action if the case is brought in (1) a district within the Defendant's state of residence, "if all defendants are residents of the State in which the district is located"; (2) a district wherein "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or—if there is no district in which the action may be brought under (1) and (2)—(3) any district that has personal jurisdiction over any defendant. 28 U.S.C. § 1391(b). The Court notes that because this Court could exercise personal jurisdiction over HGC, as evidenced by HGC's admission of the jurisdiction and venue statements in the Complaint. (*See* Compl. ¶¶ 3–4; Answer, Counterclaim, and Third-Party Complaint, ECF No. 8, ¶¶ 3–4), and HGC's choice not to file a timely 12(b)(3) motion, venue is concededly proper in the Western District of Pennsylvania. Venue is also proper in the Southern District of Ohio, however, as that is HGC's state of residence. 28 U.S.C. § 1391(b)(1).

[2] This "balance of interests" is evaluated through the doctrine of *forum non conveniens*. The Supreme Court has held that the functional equivalent of the *forum non conveniens* analysis for federal courts is codified at 28 U.S.C. § 1404(a). *Atl. Marine*, 134 S. Ct. at 580.

The Court must therefore determine whether the forum selection clause is valid and enforceable as to Pioneer and to Endurance, and if so, whether the Court should enforce the clause and transfer the case to Ohio. If the first answer is yes, *Atlantic Marine* mandates the second question also be answered affirmatively in all but the most exceptional cases.

### B. Validity and Enforceability of the Forum Selection Clause against Pioneer

The parties do not dispute that the forum selection clause in the Subcontract between HGC and Pioneer is valid and enforceable against Pioneer. (*See* Motion to Transfer, ECF No. 31; Notice, ECF No. 36.) As in *Atlantic Marine*, the forum selection clause here is mandatory because it dictates that venue is proper *exclusively* in the enumerated forum. *Wall v. Corona Capital, LLC,* 221 F. Supp. 3d 652, 658 (W.D. Pa. 2016), *aff'd*, No. 17-2275, 2018 WL 6133390 (3d Cir. Nov. 23, 2018). Although the language of the clause says "either party may file suit" in Cincinnati, it goes on to state that "the parties irrevocably submit to the venue and jurisdiction of such courts and further waive any claims or arguments of improper venue or lack of jurisdiction." (ECF No. 32–1, at 17.) The parties have not advanced, nor does the Court identify, any reading of the clause other than to mandate (not merely permit) venue in the selected forum.

### C. Validity and Enforceability of the Forum Selection Clause against Endurance

HGC argues that although Endurance is not a party to the Subcontract, the terms of the Subcontract are incorporated by reference into the Performance Bond between Pioneer and Endurance. It points to the Bond, which states that "Subcontract #: 116066.006 . . . which subcontract *is by reference made a part hereof*, and is referred to as subcontract." (Exhibit B, ECF No. 32–2, at 3 (emphasis added).) This incorporation, says HGC, binds Endurance to the terms of the Subcontract, including the forum selection clause.

The heart of Endurance's argument in opposition to transfer is that because the Performance Bond incorporated by reference the Subcontract which in turn incorporated by reference the Master Subcontract Agreement, and Endurance is not a "party" to the Master Subcontract Agreement, Endurance is not bound by the forum selection clause. In the alternative, it argues that its common-law counterclaims against HGC are not governed by the forum selection clause because they are not "disputes" under the Master Subcontract Agremeent.

Incorporation by reference, when done properly, can render a forum selection clause enforceable against a nonparty to the agreement. *See Carpenters Combined Funds, Inc., ex rel. Klein v. Kelly Sys, Inc.*, No. 14-cv-1681, 2015 WL 3457872, at \*6 (W.D. Pa. May 29, 2015). "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003). For example, in *Carpenters*, the Court determined that the collective bargaining agreements did not clearly make reference to the documents containing the forum selection clauses at issue, and therefore the clauses were not properly incorporated. *Carpenters Combined Funds*, 2015 WL 3457872, at \*7.

Where a bond is involved, if the bond places limits on the incorporated agreement, those limits may evidence the intent of a surety not to incorporate *all* of the terms of the contract. *See Kan. City S. Ry. Co v. Hanover Ins. Co.*, 159 F. Supp. 3d 729 (S.D. Miss. 2015); *cf. Ohio Farmers Ins. Co. v. Graham Constr. Servs., Inc.*, No. 12-cv-021, 2012 WL 4049849, at \*5 n.1 (D.N.D. Sept. 13, 2012) ("When there is no mandatory forum selection clause in a bond, and there is a mandatory selection clause in a subcontract, courts have held that the forum selection clause in the subcontract controls venue for purposes of suits related to the bond as well.")

7

Here, the Bond makes clear reference to the Subcontract by name and contract number.[3] It states that the Subcontract is made a part of the Bond. Moreover, because the purpose of the Bond was to ensure that Pioneer's obligations were performed under the Subcontract's terms, Endurance must have been aware of those explicit terms. *See Diversified Utilities Sales, Inc. v. Monte Fusco Excavating Contracting Co.*, 71 F.R.D. 661, 664 (E.D. Pa. 1976) ("The liability of a surety is coextensive with that of the principal, and accordingly, a surety is bound to perform whatever may be legally required of its principal."). The Bond does not limit which of the terms of the Subcontract was incorporated. Nor does it include its own forum selection clause. The forum selection clause was therefore properly incorporated by reference.

This incorporation nullifies Endurance's argument that the forum selection clause can be enforceable against only the "parties" to the Subcontract. *See Hoffman v. Fid. & Deposit Co. of Md.*, 734 F. Supp. 192, 194 (D.N.J. 1990) (noting, in the context of an arbitration clause, that many courts require sureties to arbitrate issues relating to a performance bond where the bond incorporates by reference a contract containing such a clause). Again, the parties to the Bond saw fit not to add any limitations on the terms of the Subcontract. The Court will not revisit that choice.[4]

---

[3] Endurance's argument that the "multi-layered" nature of the incorporation renders the clause unenforceable is similarly misplaced. That the Bond refers to the Subcontract Rider (which in turn refers to the Master Subcontract Agreement) does not somehow render the forum selection clause a surprise. The Court declines to assume that a sophisticated party such as the surety here would fail to read past the Rider to the Master Subcontract Agreement when agreeing to ensure that all work under the Subcontract would be performed.

[4] The Third Circuit recently clarified that "non-signatories may be bound by a forum selection clause if they are": (1) "intended third-party beneficiaries of the contract, or if they are closely related parties"; (2) the "enforcement [of the forum selection clause] was foreseeable to the non-signatory"; and (3) "the dispute itself . . . fall[s] within the scope of the forum selection clause." *In re McGraw-Hill Global Educ. Holdings LLC*, Nos. 17-2826 & 17-3444, 2018 WL 6072622, at *6 (3d Cir. Nov. 21, 2018). Because the Subcontract was properly incorporated by reference into the Bond, the Court need not consider whether Endurance, a non-signatory to the Subcontract, would be nonetheless bound by its terms. Endurance was a signatory to the Bond, which does not have a separate forum selection clause or evince any intent to limit the applicability of the forum selection clause. The forum selection clause therefore is a term of the Bond, and its obligations under the Bond, not its status as a non-signatory to the underlying Subcontract, drive this analysis.

8

Endurance also avers that the forum selection clause does not apply because its common law claim for unjust enrichment does not fall under the term's definition for "dispute(s)." "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). Therefore, "whether or not a forum selection clause applies depends on what the specific clause at issue says." *Id.* at 1075. The Subcontract here defines "dispute(s)" as "any dispute . . . or other matter in question arising out of or relating to the Master Subcontract Agreement and/or Subcontract Agreement Rider or breach thereof." Courts addressing similar contractual language have found that "[a] claim 'arises from' a contract where it can be said 'to originate from' the contract." *Spy Phone Labs LLC v. Google, Inc.*, 2015 WL 4773159, at *3 (D.N.J. (quoting *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007)). A finding that a claim originates from the contract requires a causal relationship with the contract. *Phillips*, 494 F.3d at 389.

Here, HGC's third-party claim and Endurance's counterclaim conclusively link to the Subcontract. The crux of HGC's claim is that when Pioneer defaulted, Endurance failed to perform the work Pioneer was obligated to do under the Subcontract. Similarly, Endurance's counterclaim for unjust enrichment is "based on HGC's knowing acceptance and benefit from receiving labor, materials and equipment provided by Endurance following HCG's default of Pioneer on the Project." (Endurance Br., at 1.) Endurance's assertion that its counterclaim arises independently of the claims between HGC and Pioneer does not withstand scrutiny. It is only because of Pioneer's alleged default (at issue in the first-party Pioneer v. HGC dispute) that Endurance was roped in to perform on the Bond in the first place. Indeed, Endurance already noted as much in its Counterclaim. (*See* Counterclaim, ECF No. 16, ¶ 1 (stating that the counterclaim "arises from the facts and circumstances surrounding the project known as

9

Subcontract").) Its Counterclaim "arises out of or relates to" the Subcontract, and it is therefore a "dispute" subject to the forum selection clause. The forum selection clause is valid and enforceable against Endurance.[5]

## D. Potential Severance

Endurance requests that, should the Court find the forum selection clause enforceable as to the first-party claims, it should nonetheless sever the third-party claims and retain jurisdiction over that dispute. HGC counters that severance is inappropriate. For the following reasons, the Court agrees with HGC and will decline to sever the third-party claims.

---

[5] Even if the Court were to find the clause unenforceable, the *Jumara* factors would nonetheless weigh in favor of transfer pursuant to § 1404. *See Atl. Marine*, 134 S. Ct. at 581 & n. 6; *Jumara*, 55 F.3d at 879. Private interests to be balanced include (1) the "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses"; and (6) "the location of books and records." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879). Courts also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Atl. Marine*, 134 S.Ct. at 581 & n.6).

As to the private interests, Pioneer chose the Western District of Pennsylvania, though it does not oppose transfer to HGC's preferred forum, the Southern District of Ohio, Western Division at Cincinnati. The claim arose in Bethel Park, Pennsylvania. Viewing the convenience to the parties, the Western District of Pennsylvania is not the most convenient forum for HGC or Endurance, neither of which is located in Western Pennsylvania. HGC is an Ohio Corporation with its principal place of business in Ohio, and Endurance is incorporated in Delaware and has its principal place of business in New York. Nor is the Western District of Pennsylvania the most convenient forum for the witnesses. The parties' Rule 26(a) Initial Disclosures reflect that a majority of the witnesses listed are located in states other than Pennsylvania. (*See* Exhibit A, ECF No. 42–1; Exhibit B, ECF No. 42–2.) As to the sixth factor, while the Project was located in Bethel Park, Pennsylvania, HGC avers that its relevant records are located in Cincinnati, Ohio. Endurance does not argue that its records are located in the Western District of Pennsylvania. In addition, as detailed in the Court's analysis above, convenience of the parties and judicial efficiency weigh in favor of litigating all claims together in one action in the forum agreed to by the parties, as the witnesses and evidence will likely overlap, and the claims arise from the same Subcontract.

Under *Jumara*, the public interests to be balanced include (1) "the enforceability of the judgment"; (2) "the relative administrative difficulty in the two fora resulting from court congestion"; (3) "the local interest in deciding local controversies at home"; (4) "the public policies of the fora"; and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *In re: Howmedica Osteonics*, 867 F.3d at 402 (citing *Jumara*, 55 F.3d at 879–80). In this matter, the enforceability of the judgment and court congestion in the two forum options are not major concerns. As this matter largely concerns private parties, the Court does not believe it raises a significant local interest or that it implicates public policies of the Western District of Pennsylvania as opposed to the Southern District of Ohio. This is especially so given that neither HGC nor Endurance is a citizen of Pennsylvania. Nor does the Court believe that the able judges of Ohio would be any less capable of resolving this case than this Court. Accordingly, none of the public interest factors weighs against a transfer of venue to the Southern District of Ohio.

Federal Rule of Civil Procedure 21 provides that "[t]he court may . . . sever any claim against a party." "[I]f claims are severed pursuant to Rule 21 they 'become independent actions with separate judgments entered in each.'" *White v. ABCO Engineering Corp.*, 199 F.3d 140, 145 n. 6 (3d Cir. 1999) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991)). When considering severance, "a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two separate forums." *Id.* at 144. In weighing these factors, other Courts have considered:

(1) [W]hether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Karlo v. Pittsburgh Glass Works, LLC*, No. 10-cv-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015) (quoting *Crown Cork & Seal Co. Master Ret. Trust v. Credit Suisse First Boston Corp.*, 288 F.R.D. 331, 333 (S.D.N.Y.2013)).

Here, the claims advanced by Pioneer, HGC, and Endurance all relate to the same occurrence: Pioneer's performance (or not) under the Subcontract. Litigating these facts in separate fora would make little sense, as it is likely that many of the witnesses and much of the evidence would overlap. Moreover, trying these cases in two different places could result in inconsistent results—for example, Pioneer being found not liable for failure to perform in the Southern District of Ohio and Endurance being found liable for not performing Pioneer's contractual duties under the Bond's terms in the Western District of Pennsylvania. Endurance has made no showing of prejudice should its counterclaim not be severed and instead transferred to the Southern District of Ohio.

11

Nor does Endurance's assertion that it "is evaluating potential additional tort claims against third-parties relating to the Project" counsel severance. (Endurance Br., at 2.) Endurance's contemplation of additional claims does not require this Court to sever the third-party claim and counterclaim, particularly when Endurance has made no showing, aside from its say-so, that these potential additional claims would not similarly be arising from the Subcontract and therefore the forum selection clause.

\*\*\*

Since the Court concludes that no public factor or combination of factors renders this case extraordinary, the forum selection clause contained in the Subcontract governs forum selection for this action. The Court will therefore transfer this action forthwith to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §1404(a) and the forum selection clause contained in the Subcontract, which states that "either party may file suit in the state or federal courts located in Cincinnati, Hamilton County, Ohio, and the parties irrevocably submit to the venue and jurisdiction of such courts and further waive any claims or arguments of improper venue or lack of jurisdiction." An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: December 12, 2018

cc: All counsel of record

12