UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PIONEER MECHANICAL SERVICES, LLC, *et al.*, | : | Case No. 1:18-cv-890 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| HGC CONSTRUCTION, CO., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Doc. 90)**

This civil case is before the Court on Defendant/Counter-Plaintiff HGC Construction, Co.'s motion for summary judgment (Doc. 90). Plaintiff/Counter-Defendant Pioneer Mechanical Services, LLC did not respond and the time for doing so has expired.

## I. BACKGROUND

**A. Undisputed Facts**[1]

HGC Construction, Co. ("HGC") hired Pioneer Mechanical Services, LLC ("Pioneer") to perform subcontracting work and to provide subcontracting labor on a private construction project in Allegheny County, Pennsylvania—the Artis Senior Living of South Hill project (the "Project"). (Doc. 90-1 at ¶ 1). HGC was the general contractor

---

[1] In accordance with this Court's standing orders, HGC submitted a proposed statement of undisputed facts, to which statement Pioneer failed to respond. (Doc. 90-1). HGC's statement of undisputed facts is supported by the record citations provided therein. Accordingly, the Court incorporates the statement as reference and summarizes the facts herein.

on the Project. (*Id.* at ¶ 2). Pioneer was hired as the electrical, mechanical, and plumbing subcontractor to HGC. (*Id.* at ¶ 3).

The contract between HGC and Pioneer consisted of the following: (1) a master services agreement dated February 2, 2016; (2) a rider for the Project dated August 2, 2016; and (3) various change orders, expanding Pioneer's scope of work on the project to include plumbing (collectively, the "Subcontract"). (*Id.* at ¶ 4).

Pursuant to the Subcontract, Pioneer promised to perform several scopes of work on the Project and to meet the Project's schedule. (*Id.* at ¶ 5). Pioneer failed to perform in accordance with the Subcontract, but HGC performed its obligations under the Subcontract. (*Id.* at ¶ 9).

On April 25, 2017, HGC notified Pioneer via letter of its failure to prosecute the mechanical, electrical, and plumbing scopes of work and directed Pioneer to immediately cure the deficiencies, reserving the right to supplement Pioneer's work at Pioneer's expense. (*Id.* at ¶ 10). The letter also requested Pioneer to submit within three days a full recovery plan for HGC's approval, which recovery plan needed to include start dates, completion dates, durations, and manpower for Pioneer's work. (*Id.* at ¶ 10). Finally, the letter notified Pioneer that its delays critically affected the timing of the Project, including up to six-week delays in certain areas of the project, and that Pioneer would be held responsible for all liquidated and consequential damages associated with the delay. (*Id.*)

By July 20, 2017, Pioneer had not provided HGC with a detailed recovery plan as requested in the prior letter. (*Id.* at ¶ 11). So, HGC again notified Pioneer of its failure to cure and its continued failure to prosecute the mechanical, electrical, and plumbing

scopes of work, again directing Pioneer to immediately cure the deficiencies and reserving the right to supplement Pioneer's work at Pioneer's expense. (*Id.*) HGC requested Pioneer to commence or expedite work on primary and secondary electrical site work; core area rough-in work for HVAC, electrical, and plumbing; the domestic hot water heaters; electrical switch gears and distribution panels; other HVAC equipment; and other plumbing fixtures, plumbing trim, electrical devices, fire alarm devices, kitchen connections, and HVAC devices. (*Id.*)

Pioneer still did not cure the deficiencies.

On September 8, 2017, HGC again notified Pioneer of its failure to cure and its continued failure to prosecute the mechanical, electrical, and plumbing scopes of work. (*Id.* at ¶ 12). HGC directed Pioneer to immediately cure the deficiencies and reserved the right to supplement Pioneer's work at Pioneer's expense. (*Id.*) This time, HGC attached a completion list that it had emailed to Pioneer on September 6, but to which HGC had received no response. (*Id.*) In addition to previously identified deficiencies, HGC raised problems with CT cabinet, transformer, and generator work; cable connections; main and ancillary distribution panel work and installation; exterior lighting; condensers; equipment and MEP connections; and furnaces. (*Id.*)

On September 25, 2017, HGC again notified Pioneer that it would be responsible for costs associated with Pioneer's delays and requested that Pioneer provide the necessary manpower to complete the Project. (*Id.* at ¶ 13).

On October 18, 2017, HGC again notified Pioneer of its continued failures and its continuing default. (*Id.* at ¶ 14). To that point, despite HGC's multiple requests, Pioneer

3

had still failed to provide a recovery plan. (*Id.*) In addition, HGC discovered that Pioneer had not properly submitted payment applications and there were various discrepancies with the amounts Pioneer billed, resulting in approximately $214,465 of overbilling. (*Id.*) HGC requested Pioneer to revise its payment applications and submit those properly. (*Id.*) Finally, HGC warned Pioneer that if Pioneer "pulled-off" the Project and removed its manpower, as Pioneer was threatening to do, Pioneer would further delay the Project (an additional breach of the Subcontract), and HGC would have to complete the work using alternate means and back-charge Pioneer. (*Id.*)

On November 28, 2017, HGC, still facing deficiencies in Pioneer's work, informed Pioneer that HGC would supplement Pioneer's workforce due to Pioneer's continued failure to meet the Project's schedule and would be holding Pioneer responsible for these costs. (*Id.* at ¶ 15).

On December 5, 2017, HGC informed Pioneer of HGC's efforts to mitigate damages resulting from Pioneer's breach, which at the time totaled $816,762.00 and exceeded the remaining balance of the Subcontract. (*Id.* at ¶ 16). HGC provided a detailed accounting of the damages it had incurred to that point from Pioneer's breaches. (*Id.*) Pioneer had still never submitted an acceptable recovery schedule to HGC. (*Id.*)

On December 13, 2017, after continuously failing to perform under the Subcontract and failing to meet numerous schedule milestones, HGC terminated Pioneer for default. (*Id.* at ¶ 17). After Pioneer's termination, HGC and HGC's replacement contractor discovered substantial amounts of deficient work performed by Pioneer which HGC was forced to correct. (*Id.* at ¶ 18). Pioneer submitted billing to HGC for labor,

4

material, and services that were not yet provided by Pioneer, or which were deficient and non-compliant with the Subcontract. (*Id.* at ¶ 19). HGC paid Pioneer these unearned amounts. (*Id.* at ¶ 20). Pioneer has retained the funds paid by HGC. (*Id.* at ¶ 21).

**B. Procedural History**

Arising from these facts, Pioneer originally initiated suit in the Court of Common Pleas of Allegheny County, Pennsylvania. (Doc. 1). Pioneer claimed that HGC breached the Subcontract by failing to pay amounts owed to Pioneer, and Pioneer asserted three claims against HGC: (1) breach of contract; (2) violation of Pennsylvania's Prompt Pay Act; and (3) unjust enrichment. (Doc. 1-2). In response, HGC removed the action to the Western District of Pennsylvania and asserted the following counterclaims: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. (Doc. 1; Doc. 12).

The case was then transferred to the Southern District of Ohio. (Doc. 47). However, in March 2019, Pioneer filed for bankruptcy (Doc. 60-1), and the present action was properly stayed (Doc. 66). Approximately two years later, the bankruptcy proceedings concluded. (Doc. 91-3; Doc. 91-4). HGC then filed its motion for summary judgment, seeking judgment in its favor on both Pioneer's claims and its own counterclaims. (Doc. 90). Having received no response from Pioneer, that motion is now ripe for review.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

5

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When considering an unopposed motion for summary judgment, "a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). This is because it is the moving party's "burden of establishing the nonexistence of a material factual dispute." *Id.* (quoting *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979)). However, the Court may rely on the moving party's facts when a motion for summary judgment goes unopposed because "'[n]either the trial nor appellate court…will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party.'" *Id.* 630, n.11 (quoting *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)).

### III. ANALYSIS

#### A. Pioneer's Claims Against HGC

Pioneer asserts three claims against HGC: (1) breach of contract; (2) violation of Pennsylvania's Prompt Pay Act; and (3) unjust enrichment. As discussed *infra*, HGC is entitled to summary judgment on all claims.

6

### 1. Breach of Contract

The three elements of a breach of contract claim under Pennsylvania law are as follows: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Kelly v. Carman Corp.*, 229 A.3d 634, 653 (Pa. Super. 2020) (citation omitted). The parties do not dispute that there was a contract between them. (Doc. 90-1 at ¶ 4). However, Pioneer has not shown that HGC breached that contract or that Pioneer suffered damages resulting from that breach. Accordingly, HGC is entitled to summary judgment on this claim.

### 2. Violation of Pennsylvania's Prompt Pay Act

The Pennsylvania Prompt Pay Act, applicable to Commonwealth agencies and many local government units, mirrors CASPA's purpose in the public contract sector with parallel regulations and sanctions. 62 Pa.C.S.A. §§ 3101–3102. "The clear intent of the Prompt Pay Act is to level the playing field between contractors and subcontractors when they are working on public projects. As such, the Prompt Pay Act requires contractors on public projects to honor their contractual obligations and pay subcontractors for all items satisfactorily completed." *Zimmerman v. Harrisburg Fudd I, L.P.*, 2009 PA Super 2002, 984 A.2d 497, 501, n.5 (2009) (quoting *Pietrini Corp. Agate Const. Co.*, 2006 PA Super 140, ¶ 19, 901 A.2d 1050, 1055 (2006), *disapproved of (on different grounds) by A. Scott Enterprises, Inc. v. City of Allentown*, 636 Pa. 249, 142 A.3d 779 (2016)). "The Act therefore only provides for a cause of action by a contractor against a government agency for improperly withholding payments; it does not provide a government agency with a cause of action against a contractor." *Liberty Mut. Ins. Co. v. Mun. Auth. Of the City of*

*Mckeesport*, No. CV 15-1319, 2016 WL 3124949, at *3 (W.D. Pa. June 3, 2016). The at-issue contract between HGC and Pioneer does not involve a public works project. (Doc. 90-1 at ¶ 1). Nor is HGC a government agency. The Prompt Pay Act, thus, does not apply. Accordingly, HGC is entitled to summary judgment on this claim.

### 3. *Unjust Enrichment*

To succeed on an unjust enrichment claim, a party must prove the following: (1) benefits conferred; (2) appreciation of such benefits; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. Super. 2020) (quotation omitted). "[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Id*. (quotation omitted). The at-issue relationship between HGC and Pioneer was founded on several written agreements, including (1) a master services agreement dated February 2, 2016; (2) a rider for the Project dated August 2, 2016; and (3) various change orders. (Doc. 90-1 at ¶ 4). The doctrine of unjust enrichment is, thus, inapplicable. Accordingly, HGC is entitled to summary judgment on this claim.[2]

### B. HGC's Claims Against Pioneer

HGC asserts three claims against Pioneer: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. As discussed *infra*, the Court grants HGC's motion

---

[2] Pioneer has also abandoned all of its claims by failing to respond to HGC's motion for summary judgment and by failing to prosecute.

for summary judgment on its breach of contract claim. Consequently, summary judgment on HGC's alternative claims for promissory estoppel and unjust enrichment claims is denied as moot, and the claims are dismissed with prejudice.[3]

### 1. *Breach of Contract*

As iterated, the elements of a breach of contract claim under Pennsylvania law are as follows: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages. *Kelly*, 229 A.3d at 653.

Here, the contract between HGC and Pioneer provided that Pioneer would perform subcontracting work and provide subcontracting labor for the electrical, mechanical, and plumbing scopes of work of the Project. (Doc. 90-1 at ¶¶ 1, 3). In particular, the Subcontract provided that Pioneer would perform these scopes of work according to the Project's schedule. (*Id.* at ¶ 5).

Pioneer breached by failing to perform in accordance with the Subcontract, including by failing to timely proceed with and complete work on mechanical, electrical,

---

[3] Promissory estoppel and unjust enrichment do not apply when there is an enforceable agreement between the parties. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citation omitted) (The doctrine of promissory estoppel applies only "[w]here there is no enforceable agreement between the parties[.]"); *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. Super. 2020) (quotation omitted) ("[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract."). Here, the parties do not dispute that there was a contract between them, and, indeed, HGC seeks to enforce that contract.

9

and plumbing scopes of work.[4] (*Id.* at ¶¶ 9-12). Article 11 of the Master Subcontract Agreement outlines the terms with respect to adhering to the agreed upon schedule. (Doc. 90-3 at pp. 13-15). In relevant part, it provides:

> Should the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of Subcontractor or any of its subcontractors or supplies so as to cause any additional cost, expense, liability or liquidated damages only to Contractor or to Owner, Subcontractor shall and does hereby agree to compensate Contractor and Owner for and indemnify them against all such additional costs, expenses, liability, or, liquidated, damages. (Doc. 90-3 at ¶ 11.6).

> The Contractor, at its option, for failure of Subcontractor to comply with provisions of Article 11, may with a twenty-four (24) hour written notice supplement the Subcontractor with additional manpower, equipment and/or materials, or with a Seventy-Two (72) hour Notice to commence and diligently to continue to Cure, Terminate the Subcontractor in accordance with provisions in Article 17 - Termination for Default. Subcontractor shall be responsible for all additional cost and expenses to the Contractor. (Doc. 90-3 at ¶ 11.10).

Pursuant to Article 17 ("Termination for Default"):

> If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen . . . [or] (2) fail materially in any respect to prosecute the Work according to the current schedule . . .[,] Subcontractor shall be deemed in breach of the Master Subcontract Agreement and the Subcontract Agreement Rider. (Doc. 90-3 at ¶ 17.1).

---

[4] More specifically, Pioneer breached by failing to timely proceed with or complete work on the following aspects: primary and secondary electrical sites; core area rough-in work for HVAC, electrical, and plumbing; the domestic hot water heaters; electrical switch gears and distribution panels; other HVAC equipment; other plumbing fixtures, plumbing trim, electrical devices, fire alarm devices, kitchen connections, HVAC devices; CT cabinet, transformer, and generator work; cable connections; main and ancillary distribution panel work and installation; exterior lighting; condensers; equipment and MEP connections; and furnaces. (Doc. 90-1 ¶¶ 11-12).

> After three (3) business days' written notice to Subcontractor, mailed or delivered to the Subcontractors last known address, to commence and diligently to continue cure any failure and without the prompt correction or such failure within three (3) business days, Contractor may, at its option . . . terminate the Master Subcontract Agreement and/or the Subcontract Rider for default. (Doc. 90-3 at ¶ 17.2).

On at least five occasions between April and November 2017, HGC notified Pioneer of its failure to perform and directed Pioneer to cure deficiencies, warning Pioneer that it was reserving the right to supplement Pioneer's work at Pioneer's expense. (Doc. 90-1 at ¶¶ 10-14). HGC more than met the requisite notice and waiting period. On December 13, 2017, nearly eight months after HGC's first written notice to Pioneer for continuously failing to perform under the Subcontract and failing to meet numerous schedule milestones, HGC terminated Pioneer for default. (*Id.* at ¶ 17).

Pioneer's breach caused damages to HGC, including the added costs of bringing in supplemental workers to finish the Project, to re-do unsatisfactory work by Pioneer, for the costs owed to the project owner for delays to the schedule, and for overpayments Pioneer had demanded for work not completed. (*Id.* ¶¶ 10, 14-16, 18-22).

HGC has demonstrated the existence of a contract, including its essential terms, and that Pioneer breached that contract. HGC has established liability and is entitled to summary judgment on this claim. The Court, thus, moves on to damages owed.

    2.    ***Damages***

"To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a reasonable certainty." *Ware v. Rodale Press, Inc.*, 322

11

F.3d 218, 226 (3d Cir. 2003) (quotation omitted). "At a minimum, reasonable certainty embraces a rough calculation that is not too speculative, vague or contingent upon some unknown factor." *Id.* (quotation omitted).

HGC requests compensatory damages of $3,167,060.96 (which includes attorneys' fees as up to March 15, 2019), attorneys' fees and costs since March 15, 2019, and pre-judgment and post-judgment interest at the statutory rate. (Doc. 90 at p. 9). However, after careful review, the Court cannot say with reasonable certainty the amount of damages owed. For example, HGC's breakdown of damages does not add up to its requested award of $3,167,060.96. (Doc. 90 at p. 7, n. 3). Additionally, HGC has not provided any documentation showing that the attorney fees requested are reasonable.

Thus, although HGC has established liability, an award of damages must wait. Within 28 days of this Order, HGC may file a motion requesting a sum certain as of the filing date, showing its reasoning for the same with appropriate documentation. Failure to file the motion within 28 days will result in waiver of all damages and the case will be closed.

## IV. CONCLUSION

Based upon the foregoing, HGC's motion for summary judgment (Doc. 90) is **GRANTED** as follows:

1. Judgment is entered in favor of HGC and against Pioneer on Counts I, II, and III of Pioneer's Complaint. (Doc. 1-2).

2. Judgment is entered in favor of HGC on Count I of HGC's Counterclaim. (Doc. 8). Counts II and III are dismissed with prejudice.

3. Within 28 days of this Order, HGC may file a motion for damages as of the filing date, stating its reasoning for the same with appropriate documentation.

4. The Court will direct the Clerk to enter judgment via separate order after the request for damages is resolved.

**IT IS SO ORDERED.**

Date: 11/15/2022

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge